# McDermott *v.* Eborn.

*Bill in Equity to set aside Fraudulent Conveyance.*

1. *Conveyance of stock of goods, absolute in form, but intended as mortgage; retention of possession and use by mortgagor.*—A conveyance of his entire stock of goods by a debtor to one of his creditors, in form an absolute bill of sale, but intended only as a mortgage, with retention of possession by the debtor, making daily sales, and appropriating the receipts to his own use, is made in trust for his use (Code, § 1730), and is therefore fraudulent and void, as against subsequent as well as existing creditors.

2. *Sale of mortgaged property, under attachment by mortgagee, pending suit by other creditors.*—Authorities cited on the question, which is not decided, as to the effect of a sale of mortgaged goods, under attach-

ment at the suit of the mortgagee, pending a suit in equity by another creditor attacking the mortgage as fraudulent, the mortgagee becoming the purchaser at the sale.

APPEAL from the City Court of Birmingham, in equity.

Heard before the Hon. H. A. SHARPE.

The bill in this case was filed on the 15th September, 1886, by Thomas McDermott and others, as creditors of Benj. F. Eborn, against him and the Jefferson County Savings Bank; and sought to set aside, as fraudulent, a conveyance of his stock of goods by Eborn to said bank, and to subject the property to the satisfaction of complainants' several debts against him. The conveyance to the bank was dated June 7th, 1886, and was in form an absolute bill of sale, reciting the present payment of $1,500 as its consideration; but it was never recorded, and the complainants insisted that it was intended only as a mortgage. The bank sued out an attachment against Eborn, on what day is disputed; and the attachment having been levied on the mortgaged goods, became the purchaser at the sheriff's sale. On final hearing, on pleadings and proof, the court dismissed the bill, because the complainants were subsequent creditors; but the dismissal was without prejudice, and nothing was decided as to the purchase at the sale under the attachment. The complainants appeal, and assign this decree as error.

MOUNTJOY & TOMLINSON, and SAYRE, STRINGFELLOW & LE-GRAND, for appellants, cited *Benedict, Hall & Co. v. Renfro Bros.*, 75 Ala. 127; *Sandlin v. Robbins*, 62 Ala. 485; Bump on Fraud. Conveyances, 96, 127, 2d Ed.; Benj. Sales, § 483; Code, § 1730; 43 Amer. Rep. 270; 82 Amer. Dec. 517; 20 Mo. 503; *Seals v. Robinson*, 75 Ala. 363; 29 N. J. Eq. 554.

R. H. STERRETT, and W. C. WARD, *contra*, cited *Tryon & Co. v. Flournoy & Epping*, 80 Ala. 321; 67 Ala. 542; 58 Ala. 221; 6 Wait's A. & D. 617.

SOMERVILLE, J.—Section 1730 of the present Code of Alabama (1886), corresponding to section 2120 of the Code of 1876, provides that "all deeds of gift, all conveyances, transfers and assignments, verbal or written, of goods, chattels, or things in action, made in *trust for the use of the person making the same,* are void against creditors, existing or *subsequent,* of such person."

In the case of *Benedict v. Renfro,* 75 Ala. 121; s. c., 51 Amer. Rep. 429, and again in *Murray v. McNealy,* 86 Ala. 234, we had occasion to discuss at some length, in connection

[McDermott v. Eborn.]

with the above section of the Code, the subject of mortgages on stocks of merchandise, where the mortgagor was permitted to remain in possession, and to sell the goods in due course of trade for his own benefit. We held that such transfers were virtually "made *in trust* for the use of the person making the same," within the meaning of this statute, their inevitable tendency being to hinder and delay the creditors of the mortgagor. They were said, therefore, to be fraudulent *per se*, as against such creditors. As said by the United States Supreme Court in *Robinson v. Elliott*, 22 Wall. 513, where the subject is fully discussed, such a transaction on its face shows that the legal effect of it is to delay creditors, and, for this reason, "*the law* imputes to it a fraudulent purpose."

The statute in question makes transfers of this character void equally against *subsequent* creditors, as against those who exist at the time of the transaction. It is sufficient, without more, that such is the legislative *fiat*, apart from any satisfactory policy, which, in the opinion of the courts, might justify the enactment of such a law. There is ample reason, however, for such an enactment. The apparent evidence of ownership in the mortgagor tends to disarm suspicion, and to draw subsequent creditors into lending their money, or selling their goods, to one who is thus armed by the mortgagee with means of practicing a deception.

The transfer of the grantor's stock of merchandise made to the Jefferson County Savings Bank by Eborn, on June 7th, 1886, was in form a bill of sale; but the evidence clearly shows that it was intended as a security for a debt of $1,500, and it was, therefore, but a mortgage. There is no controversy on this point. The mortgagor was permitted to remain in possession of the goods, for over three months, and to daily sell and appropriate the proceeds of sale to his own use. The evidence satisfies us, moreover, that there was an implied agreement to keep the matter secret, and not register the mortgage upon the public records.

The chancellor, as we understand his opinion, held that there must have existed an actual intention to defraud, established by evidence extrinsic to the transaction itself, in order to defeat the transfer as against subsequent creditors; apparently following the rule declared by us in the case of a mortgage on real estate accompanied by an agreement to withhold it from registration.—*Mobile Savings Bank v. McDonnell*, 87 Ala. 736; *Tryon v. Flournoy*, 80 Ala. 321; *Blennerhassett v. Sherman*, 105 U. S. 100.

This view was incorrect. The case falls within the scope of section 1730 of the Code, having reference to personal property

[McDermott v. Eborn.]

·only, and this stamps the transaction as fraudulent *per se*, or in law—fraudulent as against subsequent creditors, as well as those already in existence. In other words, such a transaction, being pronounced by statute fraudulent in law, carries with it the inherent element of an intent to hinder and delay creditors, and this is the very definition and essence of actual fraud.

There is another and distinct class of cases, where voluntary conveyances by a debtor have been held to be void against debts subsequently contracted, only where actual fraud was proved. The present case is obviously not of that class.— *Williams v. Avery*, 38 Ala. 115; *Smith v. Vodges*, 92 U. S. 183.

It follows from these views of the law, that the fraudulent mortgage given by Eborn to the bank conferred no title on the mortgagee which would avail any thing as against creditors of the mortgagor, existing or subsequent.

It is contended, however, that although the title of the bank acquired by the mortgage may be pronounced worthless by reason of its fraudulent nature, yet the title to the goods obtained by the bank under the attachment sale is valid, and should be protected by the court.

. The bill appears from the record to have been filed, and the summons to have been served on the defendants, prior to the levy of the attachment. If this was so, the lien of the complainant would be superior to that of the bank. But a motion having been made to have the return of the sheriff amended, so as to show a priority in the levy of the attachment, and this motion not having been acted on, we reverse the decree, and remand the cause, in order that some action may be taken on it.

We need not decide, in the present *status* of the case, whether the attempt to sell the equity of redemption in the mortgaged goods, under process issued on the mortgage debt, passed to the mortgagee any title by virtue of such sale. It may be that this sale operated to waive the mortgagee's title to the goods subject to the lien of the mortgage, although it would not have such effect in the case of real estate. We leave this question open, merely citing the authorities bearing on the subject, lest its decision might, in the present state of the record, do injustice to the parties litigant.—*Barker v. Bell*, 37 Ala. 354; *Powell v. Williams*, 14 Ala. 476; *Atkins v. Sawyer*, 1 Pick. 353; 11 Amer. Dec. 188; *Camp v. Cox*, 1 Dev. & Bat. (Law) 52; Code, 1886, § 2892; *Acker v. Bender*, 33 Ala. 240; *Wallis v. Long*, 16 Ala. 738; *Fash v. Ravesies*, 32 Ala. 451.

The decree is reversed, and the cause remanded.